# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In re the Detention of | No. 88353-4-I |
| JONATHAN PAUL GREEN, | DIVISION ONE |
| Appellant. | UNPUBLISHED OPINION |

FELDMAN, J. — The sole issue in this appeal is whether there is sufficient evidence that Jonathan Green committed the crime of second degree rape by forcible compulsion. Finding the evidence sufficient, we affirm.

I

In 2005, Green was charged with rape in the second degree by forcible compulsion following his arrest for the rape of a 17-year-old girl, D.J.[1] But Green was not convicted of that offense because he was found incompetent to stand trial. More recently, in 2020, Green was arrested for attempting to lure several 10-year-old children at a park.[2] Based on these alleged offenses, and further alleging that Green "suffers from a mental abnormality and/or personality disorder which makes

---

[1] We refer to D.J. by her initials to protect her privacy.

[2] Under RCW 9A.40.090(1), a person commits the crime of luring when the person "[o]rders, lures, or attempts to lure a minor or a person with a developmental disability into any area or structure that is obscured from or inaccessible to the public, or away from any area or structure constituting a bus terminal, airport terminal, or other transportation terminal, or into a motor vehicle" if the perpetrator is unknown to the victim and does not have the consent of the victim's parent or guardian.

him likely to engage in predatory acts of sexual violence," the State petitioned to commit Green as a sexually violent predator (SVP) under RCW 71.09.

An SVP is defined as "any person who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility." RCW 71.09.020(19). Where, as here, "the person charged with a sexually violent offense has been found incompetent to stand trial"—RCW 71.09.060(2) directs the court to "first hear evidence and determine whether the person did commit the act or acts charged." If the court "finds, beyond a reasonable doubt, that the person did commit the act or acts charged," it "may proceed to consider whether the person should be committed" as an SVP. *Id.*

Accordingly, the trial court below could properly consider whether Green should be committed as an SVP under RCW 71.09 only if it first determined that he previously committed the act of rape in the second degree by forcible compulsion. To decide this issue as RCW 71.09.060(2) directs, the court held a three-day hearing at which D.J. and others testified. Following the hearing, the court found that "D.J. was forcibly raped" and concluded that "Green used force that overcame D.J.'s resistance when he put her in a bear hug, held her with his arm while he pulled down her pants and underwear, and told her 'You have to'." The court further concluded, "Therefore, Jonathan Green committed the crime of Rape in the Second Degree."

RCW 71.09.060(2) also provides for the right to appeal from a trial court's

final order finding that an incompetent person committed a sexually violent offense. Green timely appealed in accordance with this statutory provision.

II

Green argues there is insufficient evidence to sustain the trial court's conclusion that he committed the crime of second degree rape by forcible compulsion. Relevant here, RCW 9A.44.050(1)(a) provides that "[a] person is guilty of rape in the second degree when, under circumstances not constituting rape in the first degree, the person engages in sexual intercourse with another person . . : [b]y forcible compulsion." "Sexual intercourse" is defined to include "any act of sexual contact between persons involving the sex organs of one person and the mouth or anus of another." RCW 9A.44.010(14)(c). "Forcible compulsion," in turn, is defined to include "physical force which overcomes resistance." RCW 9A.44.010(3). Green's sole argument on appeal is there was not sufficient evidence that forcible compulsion was used to overcome D.J.'s resistance. This argument is not persuasive.

In *State v. Roberts*, 5 Wn.3d 222, 225, 572 P.3d 1191 (2025), our Supreme Court confirmed that the test for sufficiency of the evidence in criminal bench trials was "properly articulated" in *Jackson v. Virginia*, 443 U.S. 307, 317-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). It then stated the standard of review in such cases, incorporating the test for sufficiency of the evidence, as follows:

> We review challenges to a trial court's conclusions of law de novo. We defer to the trier of fact for purposes of resolving conflicting testimony and persuasiveness of the evidence. In claiming insufficient evidence, the defendant admits the truth of the State's evidence and all reasonable inferences that can be drawn from it. Inferences are drawn in the State's favor. The conviction will be

upheld if any rational fact finder could have found the essential elements beyond a reasonable doubt. Circumstantial evidence and direct evidence are equally reliable when determining the sufficiency of the evidence.

*Roberts*, 5 Wn.3d at 225, 237 (internal citations omitted). Our Supreme Court has also noted that "[t]his is a deferential standard, but it is not a rubber stamp." *In re Pers. Restraint of Knight*, 2 Wn.3d 345, 354, 538 P.3d 263 (2023).

Applying this deferential standard here, there was sufficient evidence that forcible compulsion was used to overcome D.J.'s resistance. At the time of the alleged rape, D.J. was 17 years old and suffering from stiff and shooting pain in her legs from neurofibromatosis (tumors), which caused her to sit and rest on a log in Cedar Lanes Park during a long walk home from the library. D.J. testified that Green approached her while she was resting on the log and asked for a hug. When D.J. told Green no, he told her she "had to." Green then grabbed and hugged her, and she felt like she "couldn't get away." Green then tried to kiss her. D.J. "pushed him" and again said "no," but he again said she "had to."

D.J. further testified that, after Green kissed her, he "proceeded to try to pull my pants down and I was like telling him no -- no, and he kept saying I had to." When asked where Green's arms were while he was trying to pull her pants down, D.J. testified "[o]ne of his arms was still around me." Green then "put his mouth" in her "vagina area." Addressing that moment, the State asked D.J., "When . . . he had his mouth on you, did you try to get up?" D.J. responded, "Yes, ma'am. He had one of his arms holding me down." Confirming this testimony, the State asked, "And so you tried to get up and he was – you weren't able to because one of his arms was holding you down; is that right?" D.J. again responded, "Yes, ma'am."

D.J. testified she then "blacked out" and the next thing she recalled is that Green "got up and I remember him trying to force his private area in my mouth" while he "kept repeating I had to." The State then asked D.J., "did you do that?" She responded "Yes, ma'am." The State asked D.J., "How long did that last?" She responded, "Not long at all because some kids came up running to the park." Lastly, D.J. testified that after these children arrived, Green "got on -- he pulled his -- put his stuff -- his penis back in his pants, grabbed his bike, and he said, Nice talking to you, and he left."

Based on the above testimony, a rational fact finder could have found forcible compulsion beyond a reasonable doubt. D.J. testified Green held her so she "couldn't get away." She further testified that when she rebuffed his advances, Green told her she "had to." She added that one of Green's arms was "around me" while he pulled her pants down and that Green held her down such that she was unable to get up. And she testified regarding Green "trying to force his private area in my mouth," which Green did until "some kids came up running to the park." Particularly when viewed favorably to the State, there is sufficient evidence that Green committed the crime of second degree rape by forcible compulsion.

Our holding here is buttressed by *State v. McKnight*, 54 Wn. App. 521, 774 P.2d 532 (1989), which the trial court cited in support of its decision. The court in *McKnight* held: "to establish second degree rape the evidence must be sufficient to show that the force exerted was directed at overcoming the victim's resistance and was more than that which is normally required to achieve penetration." *Id.* at 527-28. The court then affirmed a conviction for second degree rape where the

evidence showed that McKnight "slowly push[ed the victim] to a prone position and then remov[ed] her clothes" and engaged in sexual intercourse despite "the victim's requests that the advances stop." *Id.* at 528. Similar to McKnight, Green held one arm around D.J. while removing her clothes and forced her to engage in oral sex despite her repeated protestations. As in *McKnight*, we cannot say, based on the evidence presented, that no reasonable juror could find that the force exerted was directed at overcoming D.J.'s resistance and was more than that which is normally required to achieve penetration.

Despite this, Green asserts that the State's reliance on *McKnight* "confuses two discrete concepts" as he purportedly "does not argue on appeal that there is insufficient evidence of D.J.'s resistance; he argues there is insufficient evidence that he used force to overcome that resistance." While Green is correct that the State addresses both of these issues even though he claims only the latter is at issue, our Supreme Court has emphasized that judicial review in cases challenging the sufficiency of the evidence "includes '*all of the evidence*' considered in a light most favorable to the prosecution." *Roberts*, 5 Wn.3d at 231 (quoting *Jackson*, 443 U.S. at 318-19). The State appropriately discusses all of the evidence, including evidence regarding D.J.'s age at the time of the rape and her limited ability to offer physical resistance.

Green also claims "there is lacking evidence [sic] that he was 'holding [D.J.] down' with one arm while she was on the ground, because she was never on the ground." But while the State acknowledges in its brief that attorneys for both sides "misspoke and referenced 'the ground' when discussing the two episodes of oral

sex," D.J. responded "yes" when asked "so you tried to get up and he was – you weren't able to because one of his arms was holding you down; is that right?" Contrary to Green's argument, it is immaterial whether D.J. was held down and forced to engage in oral sex while she was sitting on a log as opposed to while she was lying on the ground. Either way, sufficient evidence supports the trial court's determination that "Green used force that overcame D.J.'s resistance."

Lastly, Green relies on inapposite cases such as *State v. Corey*, 181 Wn. App. 272, 325 P.3d 250 (2014), and *State v. Weisberg*, 65 Wn. App. 721, 829 P.2d 252 (1992). In *Corey*, there was insufficient evidence to sustain convictions for indecent liberties by forcible compulsion and second degree rape where the victim "did not describe any force used by Corey beyond that which was required to make physical conduct with her." 181 Wn. App. at 278. And in *Weisberg*, which involved nonconsensual intercourse with the victim, no physical force was used and no express threats were made to overcome the victim's resistance. 65 Wn. App. at 725. Here, as discussed above, D.J. testified Green held her down and forced her to engage in oral sex. On this record, *Corey*, *Weisberg*, and other similar cases cited by Green are factually distinguishable.

Affirmed.

_Feldman, J._

WE CONCUR:

_Díaz, J._                    _Coburn, J._

- 7 -